Kevin F. McCoy
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 W. Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    vs.<br><br>KANHA KOUNDUANGTA,<br><br>            Defendant. | NO. A06-0018 CR (JWS)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THIRD MOTION TO SUPPRESS EVIDENCE - SEARCH WARRANT 3:06-mj-031-JDR** |

**I.      Introduction.**

On February 9, 2006, police officers searched a parcel they had earlier seized from the United Parcel Service sorting facility in Anchorage, Alaska.  The officers searched the parcel pursuant a warrant issued the same day by this court.  *See* Tab A (Search Warrant 3:06-mj-031-JDR).  The warrant authorized the police to search for fruits or evidence of a drug trafficking crime.  The magistrate judge issued the warrant based on the written affidavit of D.E.A. Special Agent Rodney Hollingshead.

The matter is now before the court on Ms. Kounduangta's motion to suppress all evidence derived from execution of search warrant 3:06-mj-031-JDR because Special Agent

Hollingshead's affidavit failed to establish probable cause for the search of the parcel and the seizure of the items requested. The matter is also before this court on Ms. Kounduangta's request for a *Franks* hearing because facts material to the probable cause determination were recklessly omitted from the supporting affidavit. *See Franks v. Delaware*, 438 U.S. 154 (1978).

**II.     The Warrant Application and Affidavit.**

The February 9, 2006, affidavit of Special Agent Hollingshead begins with a recitation of the officer's background and experience and then recites a series of boilerplate claims about drug traffickers. Those assertions include the following:

- that drug couriers often use fictitious names and/or misspelled names on parcels to thwart law enforcement and conceal the identities of those involved with the shipment of the contraband, affidavit ¶ 4;

- that drug suppliers will most likely pay shipping charges in cash to avoid leaving a paper trail that will lead back to them, affidavit ¶ 5;

- that the package sender's addresses are normally fictitious, the return address does not correspond to the location of the shipment, is from individual to individual, usually overnight or second day delivery, and/or is mail from shipping outlets like The UPS Store, affidavit ¶ 6;

- that the telephone numbers associated with the parcel will be non-existent and/or to an answering service, cell phone, or beeper, and addresses are bad or they are to a receiving outlet such as The UPS Store and that the telephone number sometimes does not correspond with the name listed as the parcel shipper, affidavit ¶ 6;

- that drug traffickers often employ various means of packaging, and other complex measures to mask the odor of illicit drugs to avoid law enforcement K-9 scent detection and that scent detection K-9 will not alert to the presence of all controlled substances, since they are only trained on a select few, affidavit ¶ 7;

- that people in the drug trade have other people, not known to law enforcement, rent vehicles, pagers, cellular phones, and residences in order to conceal their activities, affidavit ¶ 8;

- that Washington, California and Nevada have been identified as major drug source regions for the state of Alaska, affidavit ¶ 9.

The affidavit then explains that these factors will occasionally cause the police to expose a package with these indicators to a drug dog to see if the dog would alert.

Special Agent Hollingshead's affidavit then moves to a recitation of the facts specific to his search warrant application. The affidavit explains:

- he observed a parcel measuring 8.5 inches by 9.5 inches by 13 inches wrapped in brown paper wrapping at the UPS sorting facility in Anchorage, affidavit ¶ 11;

- that all the seams of the parcel were covered with brown paper wrapping and that both ends were heavily taped with clear packaging tape, affidavit ¶ 12;

- that a red "UPS NEXT DAY AIR" label was affixed to the parcel, affidavit ¶ 12;

- that the UPS label indicated that the parcel had been shipped from The UPS Store # 2612 located at 6715 NE 63rd Street in Vancouver, Washington by a Jason Tourn, affidavit ¶ 13;

- that the phone number listed by the shipper was (360) 822-7588, affidavit ¶ 13;

- that the parcel was addressed to Gina Johnson, Spc 94, 9499 Brayton Drive, Anchorage, Alaska and that the phone number listed for the addressee was (907) 884-8341, affidavit ¶ 14;

- that phone numbers with an 884 prefix are cellular telephone numbers, affidavit ¶ 14;

- that a check of an unspecified law enforcement data base disclosed no record of a Gina Johnson associated with the residence at 9499 Brayton Drive, Anchorage, Alaska, affidavit ¶ 15;

- that the Alaska Public Safety Information Network identified Nou Von Dong as the person associated with 9499 Brayton Drive, Anchorage, Alaska and that Nou Von Dong did not have a criminal record, affidavit ¶ 16;

- that a check of an unspecified law enforcement data base failed to reveal any record of a Jason Tourn in Vancouver, Washington or in the state of Washington, affidavit ¶ 17;

- that a check of an unspecified internet database indicated that 21 months earlier (May 2004) the shipper's phone number ((360) 882-7588) was associated with Kim Hong-Brett, affidavit ¶ 18;

- that the shipper paid $70.00 in cash to ship the parcel in question, affidavit ¶ 19;

- that the parcel was exposed to a drug detection dog and that the dog failed to alert, affidavit ¶ 19;

- that a phone call to the number listed by the shipper ((360) 882-7588) rang at the time the call was made to a computer/fax machine, affidavit ¶ 22.

Special Agent Hollingshead then told the issuing magistrate that he had not included all information known to investigators but affirmed that he was only relying on the information supplied in the affidavit in support of his probable cause request. *See* Tab A (Affidavit ¶ 23).

The magistrate judge granted the requested search warrant.

### III.   Argument.

    **A.   This Search Warrant Was Not Supported By Probable Cause Because The Sum Of The Information Provided In The Supported Affidavit Established Only A Bare Suspicion That The Parcel Contained Fruits Or Evidence Of A Drug Trafficking Crime.**

The Fourth Amendment establishes that the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. *Illinois*

*v. Gates*, 462 U.S. 213, 246 (1983) establishes that the probable cause determination requires only a "fair probability" that the things sought will be found in the item to be searched. The issuing magistrate's responsibility is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there was a fair probability that evidence of a drug trafficking offense would be found in the parcel. *Id.* at 283.

A reviewing court should accord the issuing magistrate's evaluation "great deference," and should decide only whether the magistrate had a "substantial basis" for determining whether there was a fair probability that evidence of a drug trafficking offense would be found in the parcel. *United States v. Seybold*, 726 F.2d 502, 505 (9th Cir. 1983).

Although the outer contours of probable cause are not entirely plain under the *Gates* test, it is clear that more than bare suspicions are required. *See e.g. Brinegar v. United States*, 338 U.S. 160 (1949) (probable cause requires less than evidence that would justify a conviction but more than bare suspicion). In this case, the warrant fails because the totality of the circumstances present establish only a bare suspicion that the parcel contained evidence of a drug trafficking offense.

Here is why.

The magistrate judge approved the warrant at 11:52 a.m. on February 9, 2006. The supporting affidavit fails to state when the parcel was intercepted. However, it is evident that the parcel was intercepted on February 9, 2006, before the warrant and supporting affidavit were prepared on February 9, 2006. As illustrated below, the sum of the information presented together fails to establish anything more than a bare suspicion that drugs are in the parcel.

- The drug detection dog does not alert but drug traffickers sometimes make efforts to conceal the odor of the controlled substance and the dogs are not trained to recognize all controlled substances – these facts are equivocal and do nothing to raise anything more than a bare suspicion that the parcel contains evidence of drug trafficking;

- The failure of Jason Tourn to appear in an **unspecified law enforcement database** does not establish anything more than a bare suspicion that Jason Tourn is a fictitious person;

    - what data base?

    - a wants and warrants data base?

    - a phone book?

- The failure of an **unspecified law enforcement data base** to reveal a connection between Gina Johnson and Space 94, 9499 Brayton Drive in Anchorage does not establish anything more than a bare suspicion that Gina Johnson is a fictitious person;

    - what data base?

    - a wants and warrants data base?

    - Motznik?

    - an Alaska Permanent Dividend Fund data base?

- That the phone number supplied for the addressee (907) 884-8341 is a cellular phone number fails to establish anything more than a bare suspicion that the parcel is associated with drug trafficking – cell phones are a ubiquitous part of the American culture and the use of cell phones is rapidly overtaking the use of land lines;

    - this court can judicially notice that it has now posted signs outside each court room in the United States District Court House warning counsel of confiscation polices if cell phones are not turned off in court;

    - Airline passengers are now routinely told when they can turn on cell phones to communicate with business associates, friends, and family after a plan lands;

- As of 2002, 62% of American Adults owned cell phones and cell phone usage is steadily increasing; *See* Tab B (Number of Cell Phones in the U.S. available at http:hypertestbock.com/facts/2002/BogusiaGrzywac.shtm).

• That 21 months earlier, the phone number supplied by the shipper was listed with Kim Hong-Brett is extremely stale and fails to establish anything more than a bare suspicion that the number does not currently belong to Jason Tourn or that Jason Tourn is a fictitious person;

• That the number supplied by Mr. Tourn rings back to a fax machine fails to establish anything more than a bare suspicion that Mr. Tourn is a fictitious person – at best it establishes that noone was available to answer the phone fax when the call was made;

- phone fax machines are readily available for sale and for use in a private home; *See* Tab C (Listing of Phone Fax Machines available for sale on the internet);

- all phone fax machines have modems; *See* Tab D (Affidavit of Gary Eichhorn);

- phone fax machines are designed to switch to the fax function if not answered within a designated number of rings; *See* Tab D (Affidavit of Gary Eichhorn).

• That the parcel was wrapped in brown paper with a red "next day air" and that both ends of the parcel were heavily taped with clear tape does not raise more than a mere suspicion that the parcel contained evidence of a drug trafficking offense;

- Photos of the parcel establish that it was neatly wrapped and not heavily taped; *See* Tab E (DEA Photos of the Parcel at issue);

- what is heavily taped?

- A shipment from the Lower 48 to Alaska should be carefully wrapped;

- Using clear tape follows recommended guidelines for UPS shipping (Use Pressure Sensitive plastic or nylon reinforced tape and apply three strips to both the top

  and bottom of the box). *See* Tab F (UPS directions for securing the shipping container);

•  Using clear tape also follows recommended guidelines issued by the United States Postal Service (use clear or brown packaging tape). *See* Tab G (USPS guidelines for preparing packages for shipment).

•  Finally, that the shipper paid $70.00 in cash to ship the parcel next day air does nothing more that raise a bare suspicion that the parcel contains evidence of a drug trafficking offense.

Clearly, for the reasons stated in the supporting affidavit, the officer requesting the warrant had a suspicion that drugs would be found in the parcel. The officer hinted that he had more information but that he chose not to reveal the additional information in the supporting affidavit. *See* Tab A (Supporting Affidavit ¶ 23). However, a deferential view of the magistrate judge's evaluation of the information actually provided fails to establish a substantial basis for concluding that fair probability existed that drugs would be found in the parcel. For these reasons, Ms. Kounduangta asks this court to reject the issuing magistrate's probable cause determination.

  **B. The Reckless Omission Of Readily Available Information Negating The Probable Cause Determination In This Case Warrants A *Franks* Hearing.**

In the previous section, Ms. Kounduangta points to a variety of information that is readily available but which was not included in the affidavit. The reckless omission of material information that would defeat a probable cause determination requires suppression of evidence derived from execution of the search warrant. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). If the affidavit considered with the omitted information is insufficient to establish probable cause the warrant must be voided. *Id.* A hearing is required if the accused establishes by a preponderance of the evidence that readily available material information was excluded from the supporting affidavit.

Clear proof of deliberate or reckless omission is not required at this stage. *United States v. Stanert*, 762 F. 2d 775, 781 (9th Cir.), *amended*, 769 F.2d 1410 (9th Cir. 1985); *United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982). All that is required is that the defendant make a substantial showing that the affiant omitted facts required to prevent technically true statements in the affidavit from being misleading. *Id.*

Ms. Kounduangta respectfully submits that the information discussed in the previous section was recklessly omitted from the affidavit. Of particular importance is the omission of the following information which have revealed the bare bones nature of the supporting affidavit.

- The data bases used by the officers to identify and locate Jason Tourn and Gina Johnson;

- The ubiquitous nature of cell phones in American Culture including the fact that substantial numbers of Americans own and use cell phones;

- The fact that all phone fax machines have modems and that a phone fax machine will automatically switch to fax mode after a designated number of rings;

- That the use of clear plastic tape is recommended by both UPS and the USPS.

For these reasons, Ms. Kounduangta requests that the matter be scheduled for a *Franks* hearing for the purpose of evaluating why the omitted information highlighted in this section and discussed in the previous section was recklessly omitted from the supporting affidavit.

### C. The Good Faith Exception Does Not Save This Warrant.

The government may contend that even though the warrant in this case lacked probable cause, the evidence obtained pursuant to it does not necessarily have to be suppressed. *United States v. Leon*, 468 U.S. 897, 913 (1984) created an exception to the exclusionary rule where

the officers requesting and executing the warrant acted in "good faith" reliance on the issuing magistrate's initial probable cause determination. The standard for assessing "good faith" is an objective one and it "requires that the officers have a reasonable knowledge of what the law prohibits." *Id.* 919-20 n. 20. An officer does not "manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 899. Similarly, an officer does not manifest objective good faith when information material to the probable cause determination is recklessly omitted from the supporting affidavit. *Id.* at 923.

The affidavit in this case was the sort of "bare bones" affidavit condemned in *Leon*. It fails to provide a non-conjectural basis for concluding that evidence of drug trafficking would be found inside the package. When the readily available omitted information is included, the "bare bone's" nature of the application is even more evident. The applying officer in this case had a hunch that the package contained drugs. Unfortunately his affidavit failed to supply the magistrate judge with a substantial basis for concluding to a fair probability that the package would in fact contain evidence of contraband.

**IV.    Conclusion.**

For these reasons, Ms. Kounduangta respectfully asks that all evidence derived from execution of search warrant 3:06-mj-031-JDR be suppressed.

DATED at Anchorage, Alaska this 16th day of March 2006.

Respectfully submitted,

s/Kevin F. McCoy
Assistant Federal Defender
550 West 7th Avenue, Suite 1600
Anchorage, AK 99501
Phone:          907-646-3400
Fax:            907-646-3480
E-Mail:         kevin_mccoy@fd.org