DEBORAH M. SMITH
Acting United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov
MA Bar No. 64

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:06-cr-00018-JWS-JDR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | OPPOSITION TO DEFENDANT'S |
| KANHA KOUNDUANGTA, | ) | THIRD MOTION TO SUPPRESS |
| | ) | EVIDENCE |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

COMES NOW the United States of America, by and through undersigned

counsel, and hereby opposes defendant's third motion to suppress evidence, filed at

docket 29, with an accompanying memorandum of law filed at docket 30; and a

request for a <u>Franks</u> hearing filed at docket 31. Therein, the defendant seeks to suppress evidence seized pursuant to a search warrant executed on a UPS parcel that neither listed the defendant as an addressee nor the sender. Nevertheless, the defendant claims that the warrant was not supported by probable cause and that the supporting affidavit contained reckless omissions.

The defendant's motion should be denied. As a threshold matter, the defendant has utterly failed to demonstrate that she had a reasonable expectation of privacy in a UPS parcel not addressed to her, not sent by her, and not delivered to her residence. Next, even if the defendant somehow cures this obvious defect by alleging that she somehow had a privacy interest in this parcel, the search warrant was fully supported by probable cause supplied by the affidavit, which contained no material omissions or misrepresentations. Therefore, at the very least the agents were entitled to rely upon the magistrate's finding of probable cause. Accordingly, defendant's motion for a <u>Franks</u> hearing should be denied.

## **BACKGROUND**

On Thursday, February 9, 2006, investigators assigned to the Alaska Interdiction Task Force were at the United Parcel Service (UPS) facility in Anchorage, Alaska, conducting an interdiction operation. <u>See</u> Affidavit of Special Agent Rodney Hollingshead in support of application for a search warrant

("Hollinghead Aff."), attached hereto as Exhibit A, ¶ 11.    Agent Hollingshead observed a UPS Next Day Air package that was heavily taped at all seams. Hollingshead Aff., ¶ 12.  This was consistent with Agent Hollingshead's experience in investigating drug traffickers, who frequently use various means of packaging to avoid law enforcement K-9 scent detection.  Id., ¶ 7.  The parcel had a return address listed as "Jason Tourn," with a phone number of 360-882-7588. Id., ¶ 13.  The addressee was a "Gina Johnson," Spc. 94, 9499 Brayton Drive, Anchorage, Alaska, with a cell phone contact of (907) 884-8341.  Id., ¶14.  The parcel was sent from a UPS Store in Vancouver, Washington, where the shipper paid $70 cash to ship the parcel to Alaska via "Next Day Air."  Id., ¶¶ 13, 19. Based on his experience, Agent Hollingshead knew that drug suppliers typically pay shipping charges in cash to avoid paper trails, and frequently ship drugs person-to-person from shipping outlets.  Id., ¶¶ 4, 5.

Agent Hollingshead then investigated both the purported sender and addressee of the package by checking law enforcement databases.  He found no record of a "Gina Johnson" living at 9499 Brayton Drive, Space. 94, but found a Nou Vondong using the address as of July 5, 2005.  Id., ¶¶ 15, 16.  Similarly suspicious, Agent Hollingshead found no record of a "Jason Tourn" in the entire state of Washington.  Id., ¶ 17.  Furthermore, the phone number (360) 882-7588

listed on the return address came back to a Kim Hong-Brett.  Id., ¶ 18.  When

Agent Hollingshead tried to call the number, the number was answered by the

sound of a fax machine or computer modem.  Id., ¶ 21.  All of these facts were

consistent with Agent Hollingshead's experience investigating drug traffickers,

who frequently use fictitious names on parcels, and list phone numbers on the

packages that are either non-existent or correspond to a cell phone.  Id., ¶¶ 3, 6.

Finally, the state of Washington has been identified as a major drug source region

for the state of Alaska.  Id., ¶ 9.

        Based on this information, Agent Hollingshead believed he had probable

cause to believe that the heavily taped UPS parcel – which appeared to be

addressed to someone who did not live at the delivery address, sent by someone

who did not live in the sending state, with a contact number that could not be

called – contained controlled substances.  He submitted the parcel to a K-9 handler,

who related that his canine did not alert to the presence of controlled substance in

the package.  Id., ¶ 20.  This result was not entirely surprising, however, given

Agent Hollingshead's experience relating to how drug traffickers mask the odors

that emanate from controlled substances, some of which have no odor whatsoever.

Id., ¶ 7.   Therefore, Agent Hollingshead prepared an affidavit that contained all

the relevant facts – including the failure of the K-9 to alert – and submitted it to the

Magistrate Judge in support of an application to search the parcel. The Magistrate

Judge found that the application in support of the search warrant for the parcel was

supported by probable cause, and issued the warrant. The beliefs of Agent

Hollingshead – and the findings of the Magistrate Judge – turned out to be correct

when approximately ½ kilogram of methamphetamine was found inside the

package. The methamphetamine was concealed inside a heart shaped box covered

with red felt. The heart shaped box was filled with chocolate that appeared to be

melted over an inner package. The inner package was wrapped with several layers

of cellophane and peanut butter. The innermost wrapping appeared to be a blue

plastic bag that contained the methamphetamine. The package was re-wrapped, a

representative sample of the methamphetamine was placed inside, and the package

and fitted with an electronic alerting device that would allow agents to determine

when the package was opened.   In addition, theft detection ointment was placed

inside the package to assist investigators in determining who opened the package.

 At approximately 7:48 pm, Agent Hollingshead, posing as a UPS driver,

delivered the package to 9499 Brayton Drive, space 94, where it was signed for by

a female at the residence. The defendant arrived at 9499 Brayton Drive, space 94,

at approximately 8:03 pm, and left with the package five minutes later. After some

suspicious driving in a circuitous route, the defendant took the package inside 1200

W. Dimond Blvd, space 529. The package was opened at approximately 8:41 pm, and agents entered the trailer at space 529 to secure the package. When they did, they found the package inside along with the defendant and two other people. The defendant, who did not live in the trailer at space 529, had theft detection ointment on her hands and was later arrested.

## **ARGUMENT**

**I.    THE DEFENDANT HAS NO SUBJECTIVE OR OBJECTIVE EXPECTATION OF PRIVACY IN A PARCEL THAT WAS NEITHER ADDRESSED TO HER NOR SENT BY HER.**

Quite simply, the defendant has failed to demonstrate that she suffered an invasion of a reasonable expectation of privacy as a result of law enforcement opening the UPS parcel. The defendant has the burden of demonstrating that she has a reasonable expectation of privacy in the place or object searched. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980). Simply being charged with a possessory crime, or alleging that one has a possessory interest in an item, is insufficient to demonstrate standing. United States v. Zermeno, 66 F.3d 1058, 1061 (9th Cir. 1995). Thus, the defendant has failed to carry her burden.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Whether a search and seizure is "unreasonable" depends on whether the

person invoking its protection can claim a "justifiable," a "reasonable," or a

"legitimate expectation of privacy" that has been invaded by government action.

E.g., Rakas v. Illinois, 439 U.S. 128, 143 and n. 12 (1978); United States v.

Chadwick, 433 U.S. 1, 7,(1977).   This inquiry normally embraces two discrete

questions.  The first is whether the individual, by his conduct, has exhibited an

actual (subjective) expectation of privacy; in other words, whether the individual

has shown that he seeks to preserve something as private.  The second question is

whether the individual's subjective expectation of privacy is one that society is

prepared to recognize as "reasonable"; in other words, the individual's expectation,

viewed objectively, is "justifiable" under the circumstances.  Smith v. Maryland,

442 U.S. 735, 739 (1979) citing Katz v. United States, 389 U.S. 347 (1967).

     The defendant fails both prongs of the test enunciated by the Supreme Court

in Katz.  First, there is nothing in the defendant's motion from which to infer that

she had a subjective expectation of privacy in the parcel addressed to "Gina

Johnson."  Nor is the defendant "entitled to rely on the government's allegations in

the pleadings, or positions the government has taken in the case, to establish

standing." United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995) (citing

United States v. Singleton, 987 F.2d 1444, 1449 (9th Cir. 1993)).  Because the

defendant has failed to meet her burden, the inquiry may end there.

However, notwithstanding the total absence of even a subjective belief of privacy, if the Court were to reach the second prong of the Katz test, the defendant would similarly fail.  With respect to a mailed package, it has been established that the addressee has both a possessory and a privacy interest in such package. Ex parte Jackson, 96 U.S. 727, 732 (1877).   In addition, a person who voluntarily deposits mail for delivery retains a limited possessory interest in the mailed item, but a diminished privacy interest.  United States v. Hernandez, 313 F.3d 1206, 1209-1210 (9th Cir. 2002).  However, a person that is neither the addressee or the sender of a package has no reasonable expectation of privacy in its contents.   See, e.g., United States v. Givens, 733 F2d 339, 341-42 (4th Cir. 1984) (a defendant who is neither the addressee or the sender of a package has no standing to assert a Fourth Amendment violation); United States v. Pierce, 959 F2d 1297, 1303 (5th Cir. 1992) (same); United States v. Koenig, 856 F.2d 843, 846 (7th Cir. 1988) (same).   Moreover, it is well-settled that a defendant's status as a co-conspirator, without more, is not enough to confer standing on her for Fourth Amendment purposes. United States v. Padilla, 508 U.S. 77, 81 (1993).

Accordingly, the defendant has neither a subjective or reasonable expectation in privacy in mail addressed to "Gina Johnson", sent by "Jason Tourn", and received at 9499 Brayton Drive, space 94, and opened at 1200 West Dimond,

space 529.  Thus, the Court need not consider the balance of the defendant's

motion.

## II.     THE SEARCH WARRANT WAS SUPPORTED BY PROBABLE CAUSE IN ANY EVENT.

Even if the Court were to reach the merits despite the defendant's fatal lack

of standing , her  motion fails on the merits as well**.**  When determining whether

probable cause exists, no single factor is dispositive; rather, each seizure is

evaluated by looking at the "totality of the circumstances" and then determining,

based upon the whole picture, whether there is a particularized objective basis that

supports the seizure.  United States v. Cortez, 449 U.S. 411, 417-18 (1981).  When

making such a determination, the Court must take into consideration "the factual

and practical considerations of everyday life on which reasonable and prudent men,

not legal technicians, act."  Illinois v. Gates, 462 U.S. 213, 231 (1983), quoting

Brinegar v. United States, 338 U.S. 160, 175 (1949).  Here, when each piece

information was collected,  added up and weighed together, the magistrate properly

concluded that there was probable cause to believe that the See United States v.

McQuisten, 795 F.2d 858, 861 (9th Cir. 1986) ("[a] magistrate's determination of

probable cause to issue a warrant is treated with great deference").

The defendant primarily launches a semantic attack on the affidavit, parsing

words and phrases used by Agent Hollingshead.  For example, she takes issue with the databases that revealed the suspicious nature of the persons and addresses on the package were "unspecified."  However, there is no authority for the fact that law enforcement must specify which databases they consult.  Furthermore, the defendant also speculates that the phone number left by the purported sender of the package could have been attached to a "home fax machine" that switches over to a fax after several rings.  This is not what Agent Hollingshead stated in his affidavit, and any suggestion otherwise is without support.  <u>See</u>  Hollingshead Aff.,  ¶ 21.  The defendant also takes a generous view of the taping of the package, as his own photos make clear that the package is so heavily taped on every seam that it glistens with clear tape even in the black and white photocopied exhibit submitted by the defendant in support of her motion.  <u>See</u> Defendant's Motion, Tab E .

More fundamentally, the defendant takes a "divide and conquer" approach to defeating probable cause, assailing every factor set forth by Agent Hollingshead as innocuous on its face.  However, as Agent Hollingshead candidly admits: "The indicators above have been observed on packages, which were found to contain narcotics or proceeds from the sale of narcotics.  <u>No one indicator by itself is considered suspicious, however, several or multiple indicators are suspect</u> and the package is detained for further investigation and subjected to a dog sniff.

Hollingshead Aff., ¶ 10 (emphasis added); see, e.g., United States v. $129,727.00 U.S. Currency, 129 F.3d 486 (9th Cir. 1997) (recognizing "drug courier profile" as valid basis upon which to build probable cause).   Indeed, it is all the indicators taken together led to Agent Hollingshead's belief that the package contained narcotics.   To summarize, the package was:

    (1)     heavily taped around all seams;
    (2)     sent from a source drug location, Washington;
    (3)     sent by someone who appeared to be fictitious;
    (4)     sent to someone who appeared to be fictitious;
    (5)     the phone number of the fictitious sender appeared to be fictitious;
    (6)     The phone number of the recipient was a cellular telephone;
    (7)     the parcel was delivered "Next Day Air";
    (8)     the parcel was mailed from a shipping outlet;
    (9)     the parcel was sent "person to person";
    (10)   the shipper paid approximately $70 cash to ship the parcel;

While one may take issue with each of these indicators individually, one does not need to be a trained and experienced narcotics investigator – as agent Hollingshead is – to reach the conclusion that the parcel fitting all those characteristics probably contains narcotics.  This is exactly the conclusion reached by the Magistrate Judge.   See Cortez, 449 U.S. at 418 (fact-specific circumstances giving rise to probable cause determination must be evaluated as they would be "understood by those versed in the field of law enforcement," as such approach allows officers to draw on their own experience and specialized training to make

inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." ); <u>see also</u> <u>United States v. Gil</u>, 58 F.3d 1414, 1418 (9th Cir. 1995) ("observations of conduct consistent with drug trafficking, even though apparently innocuous, can give rise to probable cause").

     Notwithstanding this compelling evidence, Agent Hollingshead sought more assurances through application of a K-9 team to the parcel.  Of course, Agent Hollinsgshead knew that canines are not infallible, and that drug traffickers are adept at avoiding scent detection by canines.  Hollingshead Aff. ¶ 7.  Indeed, the packaging of the methamphetamine ultimately recovered in this case is a testament to that fact, as it as concealed under multiple layers of plastic, peanut butter, and sealed in chocolate.   Regardless, the absence of a narcotics detector dog does not bar a finding of probable cause by a magistrate.  <u>See. e.g.,</u> <u>United States v. Anderson</u>, 663 F.2d 934, 937 n.1 (9th Cir. 1981)

## III.    AGENT HOLLINGSHEAD'S AFFIDAVIT CONTAINED NO RECKLESS OMISSIONS OR MISSTATEMENTS.

Here, even assuming the defendant somehow has standing to challenge the warrant, it cannot be said that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. 897, 923 (1984).  Nevertheless, the defendant makes a half-hearted attempt to claim that Agent Hollingshead recklessly omitted facts from his affidavit, and requests a Franks hearing.  A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information.  United States v. Reeves, 210 F.3d 1041, 1044 (9th Cir. 2000). Again, the defendant cannot meet her burden.

To support her contention that Agent Hollingshead "recklessly omitted" facts from his affidavit, the defendant points to four omissions – none of which are persuasive, much less  "substantial."  First, she claims that Agent Hollingshead did not identify the data bases used to attempt to locate "Jason Tourn" and "Gina Johnson".   However, such information is neither misleading nor false.  Perhaps it

would be different if the defendant herself put forth some evidence that "Jason Tourn" and "Gina Johnson" could be found at such addresses using some database. Understandably, the defendant has not so alleged, as no such people exist at the locations listed on the package.  Next, the defendant claims that Agent Hollingshead should have set forth the "ubiquitous" nature of cell phone is America.  Ironically, earlier in the motion, she asks that the Court judicially notice such fact (Defendant's Motion, p. 6), which begs the question, how could the Magistrate Judge be deceived by a fact that was omitted because it is obvious?  The answer, of course, is that the Magistrate Judge was not so misled.  Third, the defendant claims that Agent Hollingshead should have mentioned the fact that all phone fax machines have modems and that phone fax machines automatically switch to fax machines after a number of rings.  However, there is no evidence that Agent Hollingshead encountered a "home fax machine" when he attempted to call the phone number on the parcel.   Finally, the fact that clear plastic tape is recommended by both UPS and the U.S. Post office is far from a reckless or substantial  omission.  Again, it was not the fact that the package was taped in clear plastic tape, but rather the fact that the package was so heavily taped around every seam that aroused Agent Hollingshead's suspicion.

Perhaps the defendant would have a colorable claim for a <u>Franks</u> hearing if

Agent Hollingshead had not included the failure of the K-9 to alert to the parcel, or if he attempted to convince the Court that all packages addressed to fictitious people contain drugs. Unfortunately for the defendant, Agent Hollingshead was candid in his affidavit by setting forth the lack of a K-9 alert (¶ 20), and the fact that no one indicator found on the parcel itself is considered suspicious (¶ 10). Thus, the defendant does not come close to the substantial preliminary showing that Agent Hollingshead's affidavit contains intentionally or recklessly false statements or misleading omissions. Her request for a <u>Franks</u> hearing should be denied.

## IV.    AGENT HOLLINGSHEAD WAS ENTITLED TO RELY IN GOOD FAITH ON THE MAGISTRATE JUDGE'S DETERMINATION OF PROBABLE CAUSE.

Again, assuming the defendant has standing – which she does not – there is no allegation that the Magistrate Judge issuing the warrant wholly abandoned his judicial role in the matter, nor is there evidence that the Magistrate Judge was misled by information that Agent Hollingshead recklessly disregarded or knew as false, as set forth above. There is no claim that the warrant was so deficient on its face that the executing officers could not reasonably presume the warrant to be valid. Therefore, even assuming the warrant was not supported by probable cause, the evidence found in the package would be admissible under the good faith

exception to the exclusionary rule.  <u>Leon</u>, 468 U.S. at 926 (1984).

## CONCLUSION

For all the above reasons, the United States respectfully submits that the

defendant's motion to suppress evidence should be denied without a hearing.  The

defendant lacks standing to contest the validity of the search warrant for the parcel.

 Even if the Court were to reach the merits, it would find that the affidavit


//


//


//

was supported by probable cause, contained no omissions, and was issued by a

detached and neutral magistrate.  Accordingly, executing agents had a good faith

basis to rely upon the validity of the warrant.  No <u>Franks</u> hearing, or any

evidentiary hearing is necessary.

RESPECTFULLY SUBMITTED this  23rd day of March, 2006 in

Anchorage, Alaska.

> DEBORAH M. SMITH
> Acting United States Attorney
>
> s/ Frank V. Russo
> Assistant U.S. Attorney
> Federal Building & U.S. Courthouse
> 222 West Seventh Avenue, #9, Room 253
> Anchorage, Alaska  99513-7567
> (907) 271-5071
> (907) 271-1500 (fax)
> Frank.Russo@usdoj.gov

I declare under penalty of perjury that a true and correct copy of the foregoing
was sent to the following counsel of record on March 23, 2006, via:

(X) Electronic case filing notice

Kevin McCoy, Esq..

s/ Frank V. Russo