AFFIDAVIT OF SPECIAL AGENT RODNEY HOLLINGSHEAD
3:06-mj-031-JDR

BACKGROUND AND EXPERIENCE

1. I have been employed as a Special Agent with DEA since June, 2001. In that capacity, I have been assigned to investigate violations of the federal controlled substance laws, that is, Title 21, United States Code, Sections 841(a)(1), et seq. I have completed a sixteen week DEA Basic Agent Training Course which included instruction and training in the investigation of controlled substance distribution, criminal conspiracies and financial money laundering investigations related to drug distribution. Since June 2001, I have been involved in investigations of the importation, and distribution of cocaine, methamphetamine, heroin, MDMA (3,4 methyl-dioxy-methamphetamine) and other drugs, as well as the identification and seizure of assets used to facilitate those drug trafficking violations and assets derived therefrom.

2. Based on my training and experience in investigating controlled substance violations, and conversations with and training from other officers and agents involved in narcotics investigations I know that:

3. It is the experience of your affiant and other members of Interdiction Task Forces that drug couriers often use fictitious names and/or misspelled names on parcels to thwart law enforcement and conceal the identities of those involved with the shipment of the contraband.

4. It is the experience of your affiant and common knowledge of Interdiction Task Forces that drug suppliers will most likely pay shipping charges in cash. They do this to avoid leaving a paper trail that would lead back to them.

5. It is the experience of your affiant and common knowledge of Interdiction Task Forces Officers that package sender's addresses are normally fictitious, the return address does not correspond to the location of shipment, is from individual to individual, usually overnight or second day delivery, and/or is mailed from shipping outlets, i.e. The UPS Store.

6. It is the experience of your affiant and other members of Interdiction Task Forces that telephone numbers will be non-

existent and/or to an answering service, cell phone, or beeper, and addresses are bad or they are to a receiving outlet such as The UPS Store. Often, the telephone number does not correspond with the name listed as the parcel shipper.

7. Based on your affiants training and experience and that of other trained investigators, drug traffickers/smugglers often employ various means of packaging, and other complex measures to mask the odor of illicit drugs to avoid law enforcement K-9 scent detection. Scent detection K-9's will not alert to the presence of all controlled substance, since they are only trained on a select few. (see paragraphs 13 and 21).

8. It is the experience of your affiant and common knowledge of other members of Law Enforcement for people involved in the drug trade to have other people (not known to law enforcement) to rent vehicles, pagers, cellular phones, and residences in order to conceal their activities.

9. It is the experience of your affiant and other trained officers in the State of Alaska, that the states of Washington, California and Nevada have been identified as major drug source regions for the state of Alaska.

10. The indicators listed above have been observed on packages, which were found to contain narcotics or proceeds from the sale of narcotics. No one indicator by itself is considered suspicious, however, several or multiple indicators are suspect and the package is detained for further investigation and subjected to a dog sniff.

INVESTIGATION

11. On 02-09-06, agents/officers of the Alaska Interdiction Task Force were conducting an interdiction operation at the United Parcel Service (UPS) sorting facility in Anchorage, Alaska. While at the UPS facility, S/A Hollingshead observed a parcel that was approximately 8.5" (W) X 9.5" (H) X 13" (L), packaged in brown paper wrapping.

12. S/A Hollingshead immediately noticed that all seams of the package were covered with the brown paper wrapping and that both ends of the parcel were heavily taped, with clear packaging tape. S/A Hollingshead noted that the parcel was marked with a red label indicating "UPS Next Day Air."

13. S/A Hollingshead further examined the parcel and noted that the parcel had a return address from Jason TOURN, 360-882-7588, and was shipped from The UPS Store #2612, located at 6715 NE 63rd Street, Vancouver, Washington.

14. The parcel was addressed to Gina JOHNSON, Spc 94, 9499 Brayton Drive, Anchorage, Alaska, with the telephone number 907-884-8341. Based on S/A Hollingshead's experience and the experience of other officers, telephone numbers beginning with (907) 884- are cellular telephones.

15. According to law enforcement databases, there was no record of a Gina JOHNSON at the residence located at 9499 Brayton Drive, Space 94, Anchorage, Alaska.

16. According to the Alaska Public Safety Information Network (APSIN), Nou VONDONG was the person using the address of 9499 Brayton Drive, Space #94, Anchorage, Alaska. The record indicated that the address was last updated on 07-05-2005. Based on the same APSIN records, VONDONG did not have criminal history.

17. According to law enforcement databases, there was no record of a Jason TOURN in the Vancouver, Washington area or in the state of Washington.

18. According to an internet database, as of May, 2004, the telephone number used on the return address, 360-882-7588, was associated with a Kim HONG-BRETT.

19. After your affiant made the observations of the target package and learned about the above information, your affiant noted the tracking number 1Z402EW20162863572. S/A Hollingshead contacted UPS security and found that the parcel was shipped from Vancouver, Washington and that the shipper paid cash with approximately $70.00 United States Currency to ship the parcel to Alaska, via UPS Next Day Air.

20. S/A Hollingshead then contacted K-9 handler CDSP Sgt. Rick Houck for a scent detection check. Subsequent to the scent detection, K-9 handler Sgt. Houck related that "Roy" did not exhibit a positive indication for detecting an odor of a controlled substance in the package that was labeled with the UPS tracking number 1Z402EW20162863572.

21. During subsequent investigation, S/A Hollingshead placed a telephone call to the number, 360-882-7588, and found that the number was answered by a computer/fax machine and S/A Hollingshead heard the sounds of a modem before hanging up.

22. Based on the above listed information, S/A Hollingshead detained the parcel and transported the UPS Parcel, tracking number 1Z402EW20162863572, to the Anchorage Drug Enforcement Administration office pending the application of a search warrant.

23. This affidavit and attached application were prepared for the limited purpose of obtaining a search warrant for the package marked with the tracking number and transported the UPS packages to the Anchorage Drug Enforcement Administration office. Therefore, I have not included all information known to your affiant or other investigators involved in this investigation. Your affiant is not relying upon any other information, if any, to assist in finding of probable cause.

## REQUEST

24. Based upon my training, experience, and the experience of other agents, I submit that there is probable cause to search the package marked with the tracking number 1Z402EW20162863572 for controlled substances and other evidence of violations of Title 21, United States Code, Sections 841 (a)(1), 843(b), and Section 846.

FURTHER YOUR AFFIANT SAYTH NAUGHT

Special Agent Rodney Hollingshead
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO before me the 9th day of February 2006, in Anchorage, Alaska.

JOHN D. ROBERTS
United States Magistrate Judge

4