UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>vs.<br><br>KANHA KOUNDUANGTA,<br><br>        Defendant. | 3:06-cr-00018-JWS-JDR<br><br>**RECOMMENDATION<br>REGARDING MOTIONS TO<br>SUPPRESS**<br><br>(Docket Entries 20, 23) |

Before the court are defendant Kanha Kounduangta's first motion to suppress evidence, docket entry 20, and second motion to suppress evidence, docket entry 23. These motions have been opposed by the government at docket entries 37 and 38, respectively. An evidentiary hearing was conducted before magistrate judge on April 3, 2006. Upon due consideration of the motions and arguments of the parties, the magistrate judge recommends that the court adopt findings of fact and conclusions of law as set forth below, denying the motions to suppress.

The defendant seeks to suppress all statements made by her to law enforcement officers on February 9 & 10, 2006, on grounds that the statements were involuntary and were taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and Dickerson v. United States, 530 U.S. 428 (2000). The second motion to suppress evidence seeks an order suppressing all statements taken from her after February 10, 2006, based on her claim that her initial appearance before a federal judicial officer was unreasonably delayed in violation of Rule 5(a) of the Fed.R.Crim.P.

**Findings of Fact**

On February 9, 2006, members of the Alaska Interdiction Task Force discovered that a package at United Parcel Service sorting facility in Anchorage contained methamphetamine. The agents made a controlled delivery of the parcel after inserting a detection powder inside the package to help identify any person who might open the package.

After the parcel was delivered to the address on the package, a woman later identified as the defendant drove up to the trailer court address and entered the residence, later emerging with a package yet unopened. She drove to a second address in the trailer park and went inside. Soon thereafter, the electronic monitor emitted a tone indicating to the police that the parcel had been opened, and the police made entry.

After powder was found on the defendant's hands, she was arrested and taken to the DEA building on Tudor Road in Anchorage. At the arrest scene on

February 9, Special Agents solicited statements from the defendant. No interpreter was used, and the government does not intend to use the defendant's statements as evidence in its case-in-chief at trial. At the DEA building the defendant was processed, meaning that she was photographed, fingerprinted, and asked for certain biographical information to document her arrest.

About 12:30 a.m. on February 10, the defendant was "Mirandized" by APD drug enforcement officer Elizer Feliciano of the interdiction group. The defendant told Officer Feliciano at the DEA office that she spoke a little English. Although the defendant responded affirmatively to understanding her rights, Officer Feliciano determined from her facial expressions that she might not fully understand the advisement of rights or waiver. He did not feel comfortable in asking her any questions and decided not to do so. The defendant was then transported in Feliciano's official vehicle to the Anchorage jail.

Special Agent Rodney Hollingshead, Drug Enforcement Administration, sat on the back seat behind the defendant who sat in the front passenger seat. En route to the jail, the federal officers engaged in no interrogation or questioning of the defendant, nor did they make any statements to each other that one might reasonably assess as comments or questions directed to the defendant. The defendant was told where she was being taken. Spontaneously, the defendant stated that she could not understand why she was in trouble and remarked that "it was only a gift." Officer Feliciano thought the defendant was talking

about drugs because he knew that there had been methamphetamine in the package, and the box had been opened. He knew the "gift" contained drugs.

On February 10, 2006, Officer Feliciano prepared an affidavit in support of a criminal complaint that he submitted to the federal magistrate judge about 1:30 p.m. that day. Officer Feliciano at first thought that the initial appearance for the defendant might be held that Friday evening (February 10). However, a Laotian interpreter was needed for the proceeding, and the hearing was not conducted that Friday.

On Monday, February 13, Officer Feliciano and Agent Hollingshead picked up the defendant to transport her from the jail facility to the federal courthouse. The officers drove directly toward the courthouse and neither of the federal officers asked the defendant any questions en route. The defendant was told that she was being taken to the courthouse. She seemed emotionally upset, crying, and repeatedly said that she thought she was stupid and stated "I'm sorry."

While en route to the courthouse, Agent Hollingshead contacted Stacy Melton, Deputy U.S. Marshal, to inform her that they were en route to the courthouse. As a matter of policy, agents inform the Marshal's office when they are en route to the federal building so that the Marshal can arrange to open the sally door of the Marshal's garage in the parking area under the federal building. Deputy Melton told the officers to turn around because the hearing was going to be held Tuesday, not Monday. Officer Feliciano then returned the defendant to the jail.

During the late evening of February 9 or early morning of February 10, 2006, the drug enforcement interdiction team faxed arrest information to the U.S. Marshal. The local practice is to wait for the U.S. Marshal to learn when the initial appearance will occur, then so inform the agents.

## Discussion

The government seeks only to suppress statements it characterizes as spontaneously made by the defendant; it does not otherwise oppose the motion to suppress. The United States does not intend to introduce in its case-in-chief any statement of the defendant made by her in the residence. *See*, government's opposition to first motion to suppress evidence, docket entry 37, p. 4.

The alleged incriminating statements attributed to the defendant in the vehicles were made by her spontaneously and unsolicited. They are not the product of any interrogation directly or indirectly. There is no evidence that Officer Feliciano or Agent Hollingshead made any statements reasonably likely to elicit an incriminating response from the defendant or any response at all. Interrogation extends only to words or actions on the part of the police officers that they should have known were reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980). Because the statements were not elicited by law enforcement officers, the lack of Miranda warnings is irrelevant.

The defendant has not presented evidence to show that any prior attempts to question her at the residence would have been likely to elicit an incriminating response from her on a delayed basis.  The fact that the defendant was transported in a police vehicle to or from the jail does not create such a "police dominated atmosphere" as to render her voluntary statements not freely given.  There was nothing coercive about the officers transporting the defendant that caused her to voluntarily provide incriminating statements that were not an essentially free and unconstrained choice by her.  There is no evidence that she was subjected to physical discomfort or accused by the officers of lying.

Accordingly, the motion to suppress should be GRANTED as to all statements made by the defendant in response to interrogation at the trailer space 529.  The spontaneous statements made by the defendant in a police vehicle while being transported to and from the jail should not be suppressed.  IT IS SO RECOMMENDED.

### Initial Appearance

Rule 5(a)(1)(A) of the Fed.R.Crim.P. provides the following: "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a State or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise."  It is not disputed for purposes of this motion that the defendant was arrested on Thursday, February 9, 2006, about 10:30 a.m.  Her initial appearance before a federal judicial officer did not occur until Tuesday, February 14, 2006.  In her second motion to suppress evidence, the defendant seeks to suppress statements made

by her to DEA agents prior to her initial appearance. The defendant relies upon this five-day delay of her initial appearance, as well as 18 U.S.C. §3501(c). Section 3501(c) provides in pertinent part that in any criminal prosecution

> . . . a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law enforcement officer . . . shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit persons charged with offenses against the laws of the United States . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: provided, that the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six hour period is found by the trial judge to be reasonable considering the means of transportation, the distance to be traveled to the nearest available such magistrate judge or other officer.

Section 3501(a) and (b) require the trial court to determine the issue of voluntariness considering the time elapsed between arrest and the defendant's court appearance. Among the factors to be considered by the court is whether the defendant knew the nature of the offense with which she was charged or suspected at the time of making the confession, whether she was advised or knew that she was not required to make any statement and that such statement could be used against her, whether or not she had been advised prior to questioning of her right to assistance of counsel, and whether the defendant was without the assistance of counsel when questioned and giving such confession.

Section 3501 by its application applies to confessions made after questioning by law enforcement officers. Because Kounduangta's statements were volunteered to the agents, rather than made pursuant to questioning, her remarks do not trigger the panoply of rights delineated by §3501. *See, i.e.*, United States v. Diezel, 608 F.2d 204 (5th Cir. 1979); United States v. Bernett, 495 F.2d 943 (D.C. Cir. 1974). Spontaneous statements do not run afoul of §3501. See, United States v. Bailey, 728 F.2d 967 (7th Cir. 1984); United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1982). The defendant was advised where she was being taken and why she was being transported. Federal Criminal Rule 5(a) directs the arresting officers to take the defendant before a federal judicial officer without undue or unreasonable delay. In the usual circumstances, that may mean six hours. *See*, United States v. Alvarez-Sanchez, 975 F.2d 1396, 1399 (9th Cir. 1992), *reversed on other grounds*, 511 U.S. 350 (1994), cited by the defendant. But here the circumstances of the arrest were unusual. The defendant speaks a Laotian dialect, and there is no federally certified Laotian interpreter in the country. The law does not direct the court to conduct a meaningless hearing which would have occurred if the defendant had been brought into the courtroom without a suitable interpreter. A State certified Laotian interpreter was ultimately used for the suppression hearing in this case.

I conclude that the delay in bringing the defendant before the court was not unreasonable because of the need to locate a qualified interpreter to communicate with her. A delay due to unavailability of an interpreter has been found to be reasonable by some

courts. *See*, United States v. Pham, 815 F.Supp. 1325, 1331 (N.D. Cal. 1993); United States v. Beltran, 761 F.2d 1, 8 (1st Cir. 1985). Under the circumstances of her voluntary statements, she was not even entitled to receive the Miranda warnings. Because the delay in bringing her before the court was reasonable, her statements can be admitted. *See, i.e.*, United States v. Manuel, 706 F.2d 908, 913 (9th Cir. 1983). Here, the law enforcement officers did nothing to delay the defendant's appearance before the court or to precipitate the defendant's statements that they seek to offer as evidence at trial. Wherefore, the second motion to suppress evidence should be denied. IT IS SO RECOMMENDED.

DATED this 11th day of April, 2006, at Anchorage, Alaska.

   /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Wednesday, April 19, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not

exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON, Tuesday, April 25, 2006**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).