DEBORAH M. SMITH
Acting United States Attorney

KAREN L. LOEFFLER
Assistant U.S. Attorney
DAVID NESBETT
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
email: karen.loeffler@usdoj.gov
         david.nesbett@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-CR-00018-JWS |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S** |
| | ) | **TRIAL** |
| v. | ) | **MEMORANDUM** |
| | ) | |
| KANHA KOUNDUANGTA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## I.    INTRODUCTION

The defendant, Kanha Kounduangta, is charged in a one count indictment

with attempted possession of a controlled substance with intent to distribute in

violation of Title 21, United States Code, Section 846 & 841 (6)(1)(A).  Trial is set

for May 22, 2006.

## II.    STATEMENT OF THE CASE

### A.    Statement of Facts

This case arose out of the interception of a package, which contained

methamphetamine, and the further controlled delivery of that at package.  On

February 9, 2006, officers and agents of the Alaska Interdiction Task Force were

conducting an interdiction at a United Parcel Service sorting facility in Anchorage.

As part of that program, agents intercepted the package at issue in this case – a

box, mailed from Vancouver, Washington to "Gina Johnson",  9499 Brayton Drive

#94.  The box contained many of the standard indicia indicating the presence of

controlled substances, including heavy taping and false sender and recipient

information. Officers obtained a warrant to open the package. Inside they found a

heart shaped, red Valentines box.  Inside what appeared to be a solid block of

melted chocolate was another package containing approximately 555 grams of

methamphetamine.

Following standard procedures, officers removed the contraband and

replaced all but a small amount with a "sham" substance meant to resemble

methamphetamine.  Officers also covered the package with theft detection powder.

They then obtained a court order for a tracking device and arranged to deliver the

package to the address on the box.

Officers delivered the package at approximately 7:48 at night to the Brayton Drive address. An individual later identified as Vabha Bouanhuenh, signed for the package. A few minutes later the defendant showed up at the residence. She left her car running, took the package and then left the trailer park. The defendant, however, did not drive directly out of the trailer park. Rather, she appeared to attempt counter surveillance by driving twice around the neighborhood, at one point stopping the vehicle before leaving the area and driving to 1200 West Dimond Blvd space 529.

Upon arriving at West Dimond Blvd., the defendant got out of the vehicle and then spoke on her cellular phone outside the residence, while further appearing to watch the traffic. She then went to space 811, where she picked up 2 passengers and returned to space 529. Immediately after her entrance to the residence located at space 529, the electronic monitoring device alerted indicating the package had been opened. Officers then entered the residence. There they found the defendant seated at a table. The Valentine box with the methamphetamine was placed in a cupboard. The defendant's hands tested positive for the theft detection powder. The other two individuals tested negative. At the time of her arrest, the defendant resided at 8980 Blackberry St. In Anchorage and had lived there since May 2005.

    1.    Defendant's Statements

Before the defendant drove back to 1200 Dimond space 529 she told a

resident at space 811 that she thought she was being followed. Upon entry, at space 529, an agent asked the individuals present, "where's the box?" Defendant initially responded by becoming physically ill. The agent then began questioning her about the box. The government has acknowledged that it will not use any responses to those questions at the residence as defendant was in custody at the time. Defendant later made two spontaneous utterances during transport. First, while being transported to the Anchorage jail after her arrest, she stated that she only received a gift and did nothing wrong. Later, when she was being transported to Federal court on Feb. 13, she stated, "I'm so sorry, I'm so stupid."

    2.    Other Witnesses

    The ensuing investigation revealed a number of further incriminating facts. The residents of 9499 Brayton avenue, upon being interviewed, stated that the defendant approached them at approximately 2:00 p.m. on February 9, 2006, and asked them if they would accept a package for her. She told them it contained car parts sent by her husband. They did not know her very well but they agreed to receive the package for her. The owner of the Brayton trailer, Choumarry VonDang, further told agents that the defendant used to live in the trailer park. Ms. VonDang noted that she had never received packages for the defendant but had received some mail for her in the past that involved things like government forms that she would help the defendant fill out.

3.    Further Investigation

Interviews with other witnesses and further investigation into the origin of
the package revealed that the defendant's son and his girlfriend were in Vancouver,
Washington at the time that the package was mailed.  Further, a review of the cell
phone records connected with the defendant's son's girlfriend, shows constant
contact between that phone and the cellular phone carried by the defendant
throughout the day of February 9, 2006.  A few days after the defendant was
arrested, her son and girlfriend registered at a hotel in Vancouver, Washington
under the assumed name of John Kourn.  (Jason Kourn was the name listed as  the
shippers address on the package containing narcotics.)

B.    **Witnesses**

At trial the government intends to call approximately 15 - 20 witnesses in
the following categories:

1.    Law enforcement officers who intercepted the package, were
involved in the controlled delivery and the surveillance of the defendant between
the time she arrived at the Brayton Drive address until her arrest.  (There were
numerous officers involved in the surveillance and delivery.  The government
intends to play the tape of the radio transmission of the surveillance officers which
are present sense impression admissible under Fed.R.Evid. 803(1).  At this time the
government anticipates that it may call between 6-8 law enforcement officers.  We

also anticipate calling approximately 4-6 citizen witnesses, including the residents of 9499 Brayton Drive space 94, the landlord described above and individuals who were at 1200 Dimond space 811.

2.    The government intends to call 2 witnesses as expert witnesses – the chemist from the DEA laboratory to establish the nature and weight of the controlled substance and a law enforcement officer, Eli Feliciano, to testify as to the quantities in which methamphetamine is distributed and the street value of the amount seized.

3.    Absent stipulations the government may also call a number of records custodians to provide the authentication requirements for the defendant's lease at Blackberry St., cell phone records, records of her son's travel to Vancouver and hotel records in Vancouver.  The government anticipates that it will take approximately 2 days to present its case.

C.    **Exhibits**

The government anticipates introducing approximately 30 exhibits.  These will include physical exhibits relating to the package, photos showing the condition of the package when intercepted and documentary evidence demonstrating the defendant's residence, cell phone usage and her son's travel and stay in Vancouver during the time of the matter at issue.

III.    **LEGAL AND EVIDENTIARY ISSUES**

A.    **Expert Witness Testimony**

1.    General Standards

Expert opinions are admissible if they will assist the trier of fact to understand the evidence or determine a fact in evidence. Rule 702, Fed. R. Evid. Expert opinions, as opposed to testimony by summary witnesses, may be based on facts or data not admissible into evidence. Rule 703, Fed. R. Evid.

An expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704. The court has broad discretion to determine whether to admit expert testimony. United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987); United States v. Binder, 769 F.2d 595, 601 (9th Cir. 1985).

The government intends to provide expert testimony by a Chemist employed by the United States Drug Enforcement Administration in San Francisco, Calif as to the amount and finding of the methamphetamine recovered from the intercepted package.

The government has also intends to elicit opinion testimony from a law enforcement officer, Elie Feliciano, concerning the common dosage by which methamphetamine is sold and the approximate street value of the intercepted narcotics. The government has provided the lab report which contains the

conclusions of the DEA chemist and has provided letter notice of proposed

substance of the law enforcement officer's testimony.  The government will further

provide the required cv's as soon as possible.

    2.    Why This Testimony is Admissible

Rule 702of the Federal Rules of Evidence provides that an expert witness

may testify "[i]f scientific, technical, or other specialized knowledge will assist the

trier of fact to understand the evidence or to determine a fact in issue."  Fed. R.

Evid. 702.  Rule 703 states that an expert witness may base opinions on otherwise

inadmissible facts or data "of a type reasonably relied upon by experts in the

particular field in forming opinions or inferences upon the subject." Fed. R. Evid**.**

703.

It is permissible for government agents to testify that individual items of

evidence were "associated with," "consistent with," or "indicated" narcotics

distribution, provided that they express no opinion on the accused's guilt or

innocence, or comment on his state of mind.  This type of expert testimony does

not speak to the ultimate issue of guilt or innocence, and does not refer to the

defendant's state of mind.  The Ninth Circuit has repeatedly affirmed the admission

of expert testimony from law enforcement agents in narcotics cases.  See, e.g.

United States v. Cordoba, 104 F.3d 225, 229-30, amended, Jan. 1997 (allowing

expert testimony that a sophisticated drug dealer would not entrust large quantities

of cocaine to an unknowing dupe); United States v. Espinosa, 827 F.2d 604, 611-
12 (9th Cir. 1987)(allowing expert testimony regarding the use of apartments as
"stash pads" for drugs and money); United States v. Patterson, 819 F.2d 1495,
1507 (9th Cir. 1087) (allowing expert testimony on how criminal narcotics
conspiracies operate); United States v. Maher, 645 F.2d 780, 783 (9th Cir.
1981)(per curium)(allowing expert testimony that defendant's actions were
consistent with modus operandi of persons transporting drugs and engaging in
counter surveillance.).

       More specifically, the Ninth Circuit has also repeatedly approved the
admission of expert testimony concerning the value of drugs recovered in a
narcotics case.  Thus, in United States v. Alatorre, 222 F.3d 1098 (9th Cir. 2000)
the court held that the district court was not required to hold a pretrial hearing
under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) before
admitting expert testimony from a law enforcement officer concerning the value
and distributable quantity of marijuana and the organization and structure of drug
enterprises.  The court further noted, in Alatorre, that it had repeatedly upheld the
admission of value and structure in prior cases.  Id. at 1104 n. 8,  citing United
States v. Campos, 217 F.3d 707, 718 (9th Cir. 2000) (street value of marijuana);
United States v. Golden, 532 F.2d 1244, 1247 (9th Cir. 1976) (value of heroine is
relevant to both knowledge and intent to distribute).

3.      The Audio Tape of Surveillance Radio Transmissions

The government intends to introduce the audio tape of the surveillance officers radio transmissions made while surveilling the defendant at both trailer parks.  This tape is admissible as a present sense impression under Fed.R.Evid. 803(1) as it records the officers exact observations at the specific instance they were made.  See United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) (Testimony of officers as to observations of other surveillance officers in narcotics prosecution, made at the time the observations were being made, admissible under Rule 803(1)).

B.      **Defendant's Statements**

As noted above, the government does not intend to introduce statements made by the defendant to law enforcement officers at 9499 Brayton Drive.  The government does intend to introduce defendant's physical reaction to the question as to the location of the box and her spontaneous utterances while being transported.

IV.   **PENDING MOTIONS**

Pretrial motions were filed by the defendant challenging requesting suppression of her statements and the original search of the package as well as the Marshal's practice of shacking prisoners.  The magistrate judge has issued a report and recommendation regarding the first motion to which neither party objected.

The magistrate judge has also issued his initial report and recommendation recommending against suppression on the second motion. Finally, the defendant has appealed the magistrate judge's ruling concerning shackling. The government's response to that appeal is due on May 15, 2006 and the matter will then be before the district court.

RESPECTFULLY SUBMITTED this <u>15th</u> day of May, 2006, at Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/ Karen Loeffler
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-6306
Fax: (907) 271-1500
E-mail: karen.loeffler@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2006
a copy of the foregoing Notice of Attorney
Appearance was sent electronically to
Kevin McCoy

s/ Karen Loeffler